# UNITED STATES DISTRICT COURT

for the

Southern District of Ohio

In the Matter of the Search of )
*(Briefly describe the property to be searched)* )
An Apple iPhone with a Multi-colored Case and No Visible ) Case No. 1:21-mj-166
Serial Number and an Apple iPhone with a Silver Protective )
Case and No Serial Number, Currently Located at the )
Warren County Sheriff's Office in Lebanon, Ohio )

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A (incorporated by reference).

located in the _____Southern_____ District of _____Ohio_____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B (incorporated by reference).

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. 922(g)(1) | Possession of a Firearm or Ammunition by a Prohibited Person |

The application is based on these facts:

Please see attached Affidavit of ATF Special Agent John Remick-Cook.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

John Remick-Cook, ATF Special Agent
*Printed name and title*

Sworn to before me and signed in my presence.
**via FaceTime video**

Date: **Feb 23, 2021**

Karen L. Litkovitz
United States Magistrate Judge

City and state: Cincinnati, Ohio

# ATTACHMENT A

The property to be searched is described as:

    a. one Apple iPhone XR with a multi-colored protective case and no visible serial number (SUBJECT DEVICE 1); and

    b. one Apple iPhone with a silver protective case and no visible serial number (SUBJECT DEVICE 2).

Both of these devices are in the custody of the Warren County Sheriff's Office at 822 Memorial Dr., Lebanon, OH 45036.

This warrant authorizes the forensic examination of each Device for the purpose of identifying the electronically stored information described in Attachment B.

## ATTACHMENT B

1. All records on the Subject Devices described in Attachment A that relate to violations of 18 U.S.C. § 922(g)(1) on or about February 12, 2021, and involve CURTIS HOLLYWOOD, specifically:

    a. Images, videos, and other records and information relating to firearms and ammunition;

    b. Communications to and from CURTIS HOLLYWOOD relating to his possession of a firearm and ammunition on or around February 12, 2021;

    c. Records relating to CURTIS HOLLYWOOD's control over the premises at 724 Riddle Rd., Apartment 402, Cincinnati, Ohio 45220;

    d. any information related to sources of firearms or ammunition (including names, addresses, phone numbers, or any other identifying information).

2. Evidence of user attribution showing who used or owned the Device at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history;

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF AN APPLE IPHONE WITH A MULTI-COLORED CASE AND NO VISIBLE SERIAL NUMBER AND AN APPLE IPHONE WITH A SILVER PROTECTIVE CASE AND NO VISIBLE SERIAL NUMBER, CURRENTLY LOCATED AT THE WARREN COUNTY SHERIFF'S OFFICE IN LEBANON, OHIO | Case No. 1:21-mj-166 |

### AFFIDAVIT IN SUPPORT OF AN APPLICATION UNDER RULE 41 FOR A WARRANT TO SEARCH AND SEIZE

I, John Remick-Cook, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1. I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of two electronic devices that are currently in law enforcement possession, and the extraction from those devices of electronically stored information described in Attachment B.

2. I am a Special Agent with the Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF), and have been so employed since March of 2015. As a part of my training with the ATF, I graduated from the Federal Law Enforcement Training Center, Criminal Investigator School, located in Glynco, Georgia. I also graduated from the ATF Special Agent Basic Training Academy, located in Glynco, Georgia, in February of 2016. In my career with ATF I have been assigned to and worked with the Cleveland Police Department's Gang Impact Unit and am currently assigned to an Organized Crime Task Force, which investigates criminal organizations in the Southern District of Ohio. Prior to my employment with ATF, I was a member of the Metropolitan Police Department in Washington, D.C., where I served as a

member of the Third District Crime Suppression Team, Narcotics and Special Investigations Division's Gun Recovery Unit and as an Investigator with the Criminal Investigations Division. I was employed in that capacity from December of 2008 to March of 2015. I have received additional training in several areas of law enforcement, including but not limited to gang investigations, narcotics interdiction and investigation, and firearms interdiction and investigation. I am also a graduate of the University of New Hampshire where I received two bachelor's degrees in Sociology and Justice Studies in 2008.

3. This affidavit is intended to show only that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

### IDENTIFICATION OF THE DEVICES TO BE EXAMINED

4. The property to be searched is described as:

   a. one Apple iPhone XR with a multi-colored protective case and no visible serial number (**SUBJECT DEVICE 1**); and

   b. one Apple iPhone with a silver protective case and no visible serial number (**SUBJECT DEVICE 2**).

5. As I describe in more detail below, both phones were recovered from a vehicle being operated by Curtis HOLLYWOOD at the time of his arrest on February 12, 2021, and have been in law enforcement custody since that time.

6. The applied-for warrant would authorize the forensic examination of the **SUBJECT DEVICES** for the purpose of identifying electronically stored data particularly described in Attachment B.

//

//

## PROBABLE CAUSE

**A.     Curtis HOLLYWOOD is a convicted felon who was residing at an address on Riddle Road in Cincinnati as of early February 2021.**

7.     In 2018, Curtis HOLLYWOOD was convicted of attempted robbery, a felony of the third degree, in the Hamilton County Court of Common Pleas, case number B1807248. As of early February 2021, HOLLYWOOD was on parole and being monitored by the Ohio Adult Parole Authority (APA). As of February 2021, APA records listed HOLLYWOOD's address as 724 Riddle Rd., Apartment 402, Cincinnati, Ohio 45220. I will call this residence the "Riddle Road Address."

8.     As of February 2021, HOLLYWOOD was also under indictment for, and on pretrial release in connection with, a felony drug-trafficking offense in the Warren County Court of Common Pleas, case number 20CR037309. Records from the Warren County courts also list HOLLYWOOD's address as the Riddle Road Address.

**B.     On February 12, 2021, when HOLLYWOOD was arrested on a state warrant, a firearm was found at his address on Riddle Road.**

9.     On or about February 12, 2021, a state warrant was issued for HOLLYWOOD's arrest due to non-compliance with the conditions of his bond after he failed to appear for a mandatory drug screening on that same day. The warrant number was the same as the common pleas case number (20CR037309).

10.    In the afternoon of February 12, 2021, ATF Agents, Task Force Officers, Investigators from the Warren County Sheriff's Office (WCSO), and officers from the Cincinnati Police Department (CPD) Gun Task Force established surveillance in the area of the Riddle Road Address, which is located in the Southern District of Ohio.

11. After a short time, surveillance officers saw HOLLYWOOD and his girlfriend, Hannah Arvin, walk out the front door of the Riddle Road Address and get into a blue Kia sedan with HOLLYWOOD as the driver.

12. Gun Task Force Officers conducted a felony traffic stop on the vehicle and took HOLLYWOOD into custody without incident. When he was searched, HOLLYWOOD did not have a cell phone on him.

13. Arvin, who was the passenger, was also removed from the vehicle. WCSO Detective Abshear, CPD Officer Hoffbauer, and I later interviewed Arvin. Arvin said she is the leaseholder of the Riddle Road Address and that she and HOLLYWOOD had been staying there together. Arvin granted verbal and written consent for investigators to search the apartment and signed an ATF consent-to-search form. Arvin stated that there should be some marijuana in the apartment and maybe some prescription pills, but no firearms or evidence of other crimes.

14. Investigators brought Arvin into the apartment and investigators began to search. Arvin saw some officers searching the drawers of an antique piece of furniture with a false fireplace built into it. Arvin called over to the officers and said that there were two hidden cabinets in the furniture piece on either side of the fireplace, and she told the officers how to open them.

15. The officers thanked Arvin and opened the cabinet on the left side, revealing a firearm concealed inside. Upon this discovery, investigators stopped the search of the apartment and sought a Hamilton County search warrant for the apartment, which they obtained before completing the search.

16. I later examined photos of the firearm recovered from the Riddle Road Address and identified it as a Ruger, model P90, .45 caliber, pistol, with an obliterated serial number. The firearm was loaded with three rounds of .45 caliber ammunition. The firearm was not manufactured

in the state of Ohio and therefore traveled in interstate commerce to arrive in Ohio where it was recovered.

      **C.**    **A search of the car HOLLYWOOD was driving at the time of his arrest led to the discovery of the SUBJECT DEVICES.**

    17.    Following the discovery of the firearm as described above, investigators also obtained a warrant to search the vehicle that HOLLYWOOD and Arvin were stopped in. That search yielded the recovery of two Apple iPhones: **SUBJECT DEVICES 1 and 2**. Both cell phones have protective cases, which make it impossible to determine which phone or phones belong to HOLLYWOOD and which phone or phones might belong to Arvin. For this reason, both cell phones were taken into law enforcement custody and have been stored in a secure location since that time.

      **D.**    **HOLLYWOOD later admitted the firearm was his.**

    18.    On February 18, 2021, WCSO Detective Lewis received a message from HOLLYWOOD, who was incarcerated in the Warren County Jail at the time. The message indicated that HOLLYWOOD was interested in speaking with detectives. HOLLYWOOD was transferred to the WCSO detective's office and placed in an interview room. Det. Abshear and I read HOLLYWOOD his Miranda rights, which he waived in writing. HOLLYWOOD then said that the firearm recovered from the Riddle Road Address was his and that he had purchased it approximately two weeks after he was last released from prison.

    19.    HOLLYWOOD said that he intended to cooperate with law enforcement in his pending narcotics case and that, because he thought cooperating would put him in danger, he had purchased the firearm for protection. HOLLYWOOD conceded that he had not yet provided any information to law enforcement or otherwise put his plan to cooperate into motion.

20. HOLLYWOOD declined to consent to a search of his phone but stated that his phone is the newer of the two recovered phones.

**E. The SUBJECT DEVICES likely contain evidence of HOLLYWOOD's illegal possession of a firearm and ammunition.**

21. I know based on my training and experience that individuals involved in the illicit possession of firearms often take photographs of their firearms, ammunition, and firearm accessories. Individuals involved in illicit firearms possession often discuss firearms purchases and arrange firearms sales and purchases on social media and other internet forums via their cell phones.

22. Through training and experience, I know that cellphones are often used in firearm trafficking. Such electronic devices provide access to internet-based social media applications and websites, which can be used to solicit and advertise firearms for sale as well as research potential locations where firearm trafficking may occur. Such electronic devices can contain this information even after the user has attempted to delete it. Additionally, such devices are used by firearms traffickers to advertise and display their inventory. This may include pricing information, photos of merchandise (firearms, ammunition, and firearm accessories) and methods of acquisition of such products. Such photographs often depict information allowing firearms to be identified and subsequently traced and tracked in interstate commerce. The electronic devices often contain communications and messages concerning arrangements to traffic firearms. In my experience, this can include providing images of firearms to the potential customer and communications regarding price of firearms.

23. Because the **SUBJECT DEVICES** have protective cases on them, agents are not able to determine which model each phone is for the purposes of determining which phone is the "newer" of the two (given that HOLLYWOOD claimed that his phone was the newer device).

Based on my training and experience interviewing criminal suspects, I also believe that HOLLYWOOD may have lied to law enforcement about which phone was his in the hopes of preventing law enforcement from searching the more incriminating of the two devices. Moreover, I believe both phones may belong to HOLLYWOOD, because in my training and experience, those involved in the dealing of controlled substances (as I believe HOLLYWOOD likely is, based on his pending indictment for a controlled-substances trafficking offense) commonly possess more than one cellphone. For example, many criminals have one phone that they use for personal communications (e.g., with family members) and another phone that they use to communicate with criminal associates. Similarly, I know that drug dealers commonly have one phone they use with their customers and another they use with their suppliers so that, if one phone is wiretapped, law enforcement will not be able to identify the entire supply chain.

24. The **SUBJECT DEVICES** are currently in storage at the Warren County Sheriff's Office at 822 Memorial Dr., Lebanon, OH 45036. In my training and experience, I know that the **SUBJECT DEVICES** have been stored in a manner such that their contents are, to the extent material to this investigation, in substantially the same state as they were when the **SUBJECT DEVICES** first came into the possession of law enforcement.

25. Based on the above information, I submit that there is probable cause to believe that HOLLYWOOD possessed a firearm and ammunition in violation of 18 U.S.C.§ 922(g)(1), and that evidence of that possession will be located on the **SUBJECT DEVICES**.

## TECHNICAL TERMS

26. Based on my training and experience, I use the following technical terms to convey the following meanings:

a. Wireless telephone: A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals. These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones. A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone. In addition to enabling voice communications, wireless telephones offer a broad range of capabilities. These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet. Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

b. Digital camera: A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film. Digital cameras use a variety of fixed and removable storage media to store their recorded images. Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader. Removable storage media include various types of flash memory cards or miniature hard drives. Most digital cameras also include a screen for viewing the stored images.

      This storage media can contain any digital data, including data unrelated to photographs or videos.

c. PDA:  A personal digital assistant, or PDA, is a handheld electronic device used for storing data (such as names, addresses, appointments or notes) and utilizing computer programs.  Some PDAs also function as wireless communication devices and are used to access the Internet and send and receive e-mail.  PDAs usually include a memory card or other removable storage media for storing data and a keyboard and/or touch screen for entering data.  Removable storage media include various types of flash memory cards or miniature hard drives.  This removable storage media can store any digital data.  Most PDAs run computer software, giving them many of the same capabilities as personal computers.  For example, PDA users can work with word-processing documents, spreadsheets, and presentations.  PDAs may also include global positioning system ("GPS") technology for determining the location of the device.

d. IP Address: An Internet Protocol address (or simply "IP address") is a unique numeric address used by computers on the Internet.  An IP address is a series of four numbers, each in the range 0-255, separated by periods (e.g., 121.56.97.178).  Every computer attached to the Internet computer must be assigned an IP address so that Internet traffic sent from and directed to that computer may be directed properly from its source to its destination.  Most Internet service providers control a range of IP addresses.  Some computers have static—that is, long-term—IP addresses, while other computers have dynamic—that is, frequently changed—IP addresses.

27. Based on my training, experience, and research, I know that the **SUBJECT DEVICES** have capabilities that allow them to serve as a wireless telephone, computer, digital camera, portable media player, GPS navigation device, and PDA. In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

28. Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensics tools.

29. *Forensic evidence.* As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the Device was used, the purpose of its use, who used it, and when. There is probable cause to believe that this forensic electronic evidence might be on the **SUBJECT DEVICES** because:

   a. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file). Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

   b. A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw

conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

c. The process of identifying the exact electronically stored information on a storage medium that is necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

d. Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

30. *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the **SUBJECT DEVICES** consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the **SUBJECT DEVICES** to human inspection in order to determine whether it is evidence described by the warrant.

31. *Manner of execution.* Because this warrant seeks only permission to examine devices already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

**CONCLUSION**

32. I submit that this affidavit supports probable cause for a search warrant authorizing the examination of the **SUBJECT DEVICES** described in Attachment A to seek the items described in Attachment B.

Respectfully submitted,

JOHN REMICK-COOK
Special Agent
Bureau of Alcohol, Tobacco, Firearms and Explosives

Subscribed and sworn to before me on February  23 , 2021.

Karen L. Litkovitz
United States Magistrate Judge

# **ATTACHMENT A**

The property to be searched is described as:

    a. one Apple iPhone XR with a multi-colored protective case and no visible serial number (SUBJECT DEVICE 1); and

    b. one Apple iPhone with a silver protective case and no visible serial number (SUBJECT DEVICE 2).

Both of these devices are in the custody of the Warren County Sheriff's Office at 822 Memorial Dr., Lebanon, OH 45036.

This warrant authorizes the forensic examination of each Device for the purpose of identifying the electronically stored information described in Attachment B.

## **ATTACHMENT B**

1. All records on the Subject Devices described in Attachment A that relate to violations of 18 U.S.C. § 922(g)(1) on or about February 12, 2021, and involve CURTIS HOLLYWOOD, specifically:

    a. Images, videos, and other records and information relating to firearms and ammunition;

    b. Communications to and from CURTIS HOLLYWOOD relating to his possession of a firearm and ammunition on or around February 12, 2021;

    c. Records relating to CURTIS HOLLYWOOD's control over the premises at 724 Riddle Rd., Apartment 402, Cincinnati, Ohio 45220;

    d. any information related to sources of firearms or ammunition (including names, addresses, phone numbers, or any other identifying information).

2. Evidence of user attribution showing who used or owned the Device at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history;

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.